[Crim. No. 62.   Fourth Appellate District.—April 5, 1932.]

THE PEOPLE, Respondent, v. FRANK DE ANGELO, Appellant.

W. E. Balcom for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

MARKS, J.—Appellant was accused by an information, filed by the district attorney of San Bernardino County, of the crime of arson alleged to have been committed on or about the fifteenth day of July, 1931. He was convicted before a jury and his motion for new trial denied. He has appealed from the judgment and the order denying this motion.

On July 15, 1931, appellant was living with his wife and child in a small four-room house which he had built on property leased from Fred L. Hunt, and situated about six miles southeasterly from the city of Ontario. He had insured the house and its furnishings in a sum greatly in excess of their value. On the above date a payment became due from appellant to his landlord which he did not have the money to make, and the two went to the city of Pasadena to interview the agent of a finance company which had already loaned appellant money on his contract with Hunt, their purpose being to request a further loan to appellant of a sufficient amount to pay his indebtedness then due to Mr. Hunt. No more money could be obtained from this source and they returned to appellant's house in the afternoon of the same day, Mr. Hunt continuing on a business errand which took him to a point near the city of River-

side, returning to his home at about the hour of 11:30 o'clock that same evening.

Appellant took his wife and child to visit his father-in-law in the city of Corona on this same evening, leaving his home between 7 and 7:30 o'clock. He was not then on good terms with his father-in-law and went to a picture show in Corona, where he stayed between the hours of 8 and 10 o'clock, when he returned to the house of his father-in-law for his wife and child and proceeded to his own home, arriving there between 10:30 and 11 o'clock to find that the house and its contents had been damaged by fire. After having discussed this happening with certain of his neighbors, and particularly Mrs. Fred L. Hunt, he and his wife and child went to the city of Ontario, where the three spent the balance of the night in a rented apartment. Appellant arose about 6 o'clock the following morning, had his breakfast and returned with his wife and child to his residence, reaching there at about 6:30 o'clock. The three then went to the home of a Mrs. Ida Buccura to secure her services in the packing of corn which was then being harvested by appellant. The four returned to appellant's house, reaching there after 8 o'clock, and found that it had again been on fire and, with its contents, quite seriously damaged.

R. S. Woodard, a neighbor of appellant residing about a quarter of a mile to the west, saw smoke and fire issuing from appellant's house at about five minutes past 8 o'clock on the evening of July 15th. The smoke was black and resembled that which would come from burning oil. He went to the house and with a friend succeeded in extinguishing the flames. Some of the furniture was partially burned and it was removed to the front yard by the two men. This fire originated in the rooms on the westerly side of the house. At about ten or fifteen minutes past 7 o'clock on the following morning neighbors again saw that the house was on fire, the fire originating in the rooms on the easterly side. The flames had gained such headway that it was necessary to call the fire department from Ontario, which extinguished it. Oil and kerosene soaked rags, together with oil and kerosene in cans and other containers, were found in numerous places in the house. Oil had been smeared on the interior walls evidently with a brush which was found the morning of the 16th, in a can partially filled

with oil mixed with kerosene. At the rear of the house appellant had three storage tanks in which were separately kept lubricating oil, gasoline and kerosene. The tanks were locked and the locks were not disturbed after the fire on the morning of July 16th. It is admitted by both parties that both fires were of incendiary origin.

Two other circumstances in the evidence deserve mention. One was that a blue or green sedan was seen in the yard near appellant's house after the time appellant left with his wife and child for Corona and before the first fire was discovered. Appellant's brother-in-law owned such an automobile. The second was that appellant failed to report the first fire to any officer even though he knew from his inspection before he went to spend the night in Ontario that it was of incendiary origin, and that he made immediate efforts to collect his fire insurance after the fire of July 16th though he knew that both fires were of such origin.

Appellant urges as grounds for a reversal of the judgment, first, that the trial court erred in giving two instructions to the jury, and second, that the trial court erred in denying his motion for new trial on the ground of newly discovered evidence.

■ One of the instructions of which appellant complains contained the substance of section 31 of the Penal Code defining who are principals in the commission of a crime. He urges that this instruction was not applicable to the facts of the case and was therefore erroneously prejudicial. We cannot agree with him in this contention. While it might have been better to have omitted the giving of this instruction, still, on the record before us, we cannot conclude that it was entirely unjustifiable. There was no direct evidence as to who prepared and lighted the incendiary fires in appellant's house. He and his wife had equal opportunities and might have had the same motives and certainly would have received the same advantages from the insurance to be received following their losses from the fire. It is not beyond the realm of possibility that the two might have acted jointly in this crime of arson. Appellant made evasive, untrue, and incriminating statements in attempting to explain the fire during the time its origin was being investigated by the officers of the law and before criminal charges were preferred against him. No such statements were made

by his wife. These statements furnish the evidence pointing more strongly to the guilt of appellant than to an implication of his wife in the commission of the offense. In view of these circumstances we do not believe that the error in giving this instruction, if it be assumed to be error, is sufficient to justify us in a reversal of the judgment under the provisions of section $4\frac{1}{2}$ of article VI of the Constitution and the many decisions interpreting and applying its provisions.

The court gave a cautionary instruction on the defense of alibi which has been given by many trial judges and generally criticised by appellate courts in this state. It is not necessary to review the numerous decisions in which it has been held that this instruction should not be given but which have refused to reverse the judgments of conviction where the instructions taken as a whole were fair and correct. The trial court in the instant case gave a proper instruction on the defense of alibi to the effect that it need only raise a reasonable doubt of the guilt of appellant in the minds of the jurors. It also repeatedly instructed the jury on the questions of burden of proof and reasonable doubt. These instructions bring the case without the rule in the case of *People* v. *Garrett,* 93 Cal. App. 77 [268 Pac. 1071], and within the rule of the cases cited in 8 Cal. Jur. 377, and in the two supplements to this volume. Under the circumstances of the instant case we do not believe that the giving of this cautionary instruction requires us to reverse the judgment. Similar instructions might better be omitted by trial judges in the future.

Upon his motion for new trial appellant presented his own and the affidavits of three others containing what he maintains to be newly discovered evidence upon which the trial court should have granted his motion for new trial. Two of these witnesses were prepared to testify that they saw appellant in a moving picture theater in the city of Corona between the hours of 8 and 10 o'clock on the evening of July 15, 1931. After carefully reviewing the record we have concluded that the evidence in the court below rather conclusively establishes that appellant was in this theater during the hours stated. The fact of his being there was not seriously questioned by the prosecution. This newly discovered evidence was not of sufficient materiality

or weight to require a new trial of the case as it was merely cumulative of other evidence admitted during the trial and proving a fact not controverted by the respondent.

Appellant also submitted the affidavit of one Tony Sartello in which it was stated in effect that Sartello called at appellant's home between the hours of 8 and 8:30 o'clock on the evening of July 15, 1931; that he went to the house and knocked upon the door but that no one answered; that he returned to his automobile, turned on his lights and that a man passed in front of his car within the illuminated area, whom he subsequently identified as probably being F. L. Hunt. The trial court exercised a proper discretion in denying a motion for a new trial upon the ground of the newly discovered evidence set forth in this affidavit under the rule announced in 8 Cal. Jur. 442, as follows: "A motion for new trial is addressed to the sound legal discretion of the trial court, and its action will not be disturbed upon appeal except in an instance manifesting a clear and unmistakable abuse of such discretion. This rule is peculiarly applicable to an application based upon the ground of newly discovered evidence, as to which an enlarged discretion is committed to the trial court, because of the disfavor with which such applications have always been regarded. This discretion is to be exercised in determining the diligence shown, the truth of the matters stated, and the materiality and probability of the effect of them if believed to be true. The question as to whether the evidence produced on the motion is such as to render a different result probable is one peculiarly addressed to the discretion of the trial judge."

The evidence rather conclusively shows that between 8 and 8:30 o'clock on the evening of July 15, 1931, F. L. Hunt was a number of miles distant from the scene of the fire. It is also very evident that the first fire was started some minutes prior to 8 o'clock on this evening. It had progressed to such an extent that at five minutes past 8 o'clock black smoke was issuing from the house and flames had broken out through one of the windows on the west side and were burning upward to the roof. If Sartello had been at the house between 8 and 8:30 o'clock on this evening it is quite certain that he did not see F. L. Hunt, and it is also quite certain that he must have seen that the

house was on fire. The trial court might easily have concluded that the statements in this affidavit were so contrary to established facts that the witness was not worthy of credit and that the contents of the affidavit should be disregarded as inherently improbable.

The judgment and the order appealed from are affirmed.

Barnard, P. J., and Jennings, J., concurred.