[Crim. No. 73.  Fourth Appellate District.—November 4, 1932.]

THE PEOPLE, Respondent, v. JOE ANTOLIN, Appellant.

J. P. Harvey Hearn for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was accused of having shot and killed one Eugenio Herrera and after a trial by a jury, was found guilty of manslaughter. A motion for a new trial based on the ground of newly discovered evidence was denied and from that order and from the judgment this appeal is taken.

The record contains the testimony of three eye-witnesses to the shooting and, as the trial court remarked in passing upon the motion for new trial, the evidence is overwhelming that the appellant actually shot and killed the deceased. The shooting occurred around 7:00 or 7:30 P. M. on May 8, 1932, in a Mexican camp on a ranch in Orange County. In addition to the evidence of the eye-witnesses who saw the shots fired by the appellant, the prosecution introduced the following evidence relating to the gun used and what became of it. The foreman of the ranch testified that on the afternoon preceding the shooting, at about 3:30 P. M., he was in a house in the camp occupied by Joe Chacon, situated a short distance from the scene of the shooting, and there saw a belt and holster with a pistol in the holster and bullets in the belt; that very shortly after the shooting he went into this house to see if the gun and belt were still there but found they were gone; and that a few days later he went back and asked for the belt and holster and was handed the belt without the holster, the belt being "all broke and cut up". A police officer testified that he was talking with Joe Chacon when he first received information of the shooting; that he started to go up to the scene of the trouble; that Joe Chacon ran ahead of him; and that when he arrived at the place, Chacon was not there. Another officer testified that shortly after the shooting occurred he arrived on the scene and saw the appellant "seated in the car holding his leg, and his leg was all covered with blood"; that Joe Chacon was not there when he arrived but that he came up later; and that a little later he went to search Chacon's house and found Joe Chacon there with blood on one of his sleeves. Another witness testified that shortly after the shooting he saw Joe Chacon start to help the appellant and then take a pistol from him and run down the street with it. Another witness testified that about ten minutes after

the shooting occurred she saw Joe Chacon running down the road with a pistol in his hand.

Appellant's main contention is that the court abused its discretion in refusing a new trial. The newly discovered evidence relied on related entirely to what became of the gun with which the deceased was killed, and was presented to the court on the hearing of the motion in the form of four affidavits sworn to by the father, mother and two sisters, respectively, of Joe Chacon. These affidavits are all to the same effect, which is that during the time the shooting occurred Joe Chacon was in the company of the affiants about three hundred feet from the scene of the shooting; that immediately following the firing of the shots, Joe Chacon, with the four affiants, left for the home of another party about one and one-half miles away ''to inform him of said shooting''; that at no time on the evening of May 8, 1932, either prior to, during or after said shooting, did Joe Chacon approach or go near the place where said shooting occurred; and that there had been no pistol in the house where Joe Chacon resided, since about the month of March, 1932. It might well here be said in reference to these affidavits as was said in *People* v. *De Angelo,* 122 Cal. App. 360 [9 Pac. (2d) 850] : ''The trial court might easily have concluded that the statements in this affidavit were so contrary to established facts that the witness was not worthy of credit and that the contents of the affidavit should be regarded as inherently improbable.'' In addition, it is obvious that the new evidence relied on would only tend to impeach the evidence introduced by the prosecution as to what became of the gun, which in itself was merely corroborative in its nature and was not essential to a conviction. The evidence was overwhelming that the appellant did the shooting and it was neither necessary for the prosecution to establish what became of the gun nor would the evidence offered, if received and believed, have shown that the appellant did not fire the shots. No abuse of discretion in denying the motion is shown (*People* v. *Webber,* 149 Cal. 325 [86 Pac. 671]; *People* v. *Holmes,* 126 Cal. 462 [58 Pac. 917]).

It further appears that the motion for a new trial was denied both on the ground that the evidence offered could not be expected to affect the result, and because no proper showing of diligence was made. The appellant

especially questions the latter ground, claiming that he was completely taken by surprise; that the possibility that Joe Chacon had any connection with the case did not appear until the second and last day of the trial; and that without the evidence in reference to the actions of Chacon a conviction could not have been had. Not only does the evidence indicate that a conviction could have been had without the evidence as to what was done by Chacon, but we think the court was justified in holding that a proper showing of diligence had not been made. The appellant himself testified that he and his mother were visiting at the Chacon home, a few feet from the scene of the shooting, during the afternoon preceding; that he went over to the house where the shooting occurred about 3:30; that he went back to Chacon's house about 5 o'clock to take his mother home; and that he returned to the house where the shooting occurred about 6. On the first day of the trial the first witness called testified that he first saw the appellant on that day as he was leaving Joe Chacon's house. The evidence of the foreman of the ranch as to seeing the pistol, belt and holster in Joe Chacon's house on that afternoon and that he found them gone immediately after the shooting was also given on the first day of the trial. It further appears that the four persons now offered as witnesses remained in the camp in question until June 27, 1932, and then moved only a few miles away. In view of all of this, with the further facts that this shooting occurred in a small camp with all parties close at hand, with so many persons knowing the connection of Joe Chacon to the case, and with the availability of all of the witnesses, it cannot be held that the court abused its discretion in denying a new trial for this reason, as well as upon the other and main ground. For the general rule governing a trial court in exercising its discretion in connection with such a motion, see 8 Cal. Jur. 442.

The only other point raised is that it appears from certain remarks made at the hearing of the motion for a new trial that the trial judge believed that the appellant would not have been convicted had he set up a claim of self-defense, and therefore, in the opinion of the trial judge, an innocent man has been convicted. Without question it would have been the duty of the trial judge to grant a new trial if, in his opinion, the appellant was innocent. However, the

entire statement made by the trial judge shows that he considered the evidence overwhelming to the effect that the appellant shot and killed the deceased, and that he placed no reliance at all upon the story related by the appellant on the witness-stand. The only possible significance that could be placed on the particular remarks here relied on, taken in connection with their context, is that the court believed the defendant might have had a better chance with the jury, on a theory of self-defense, had he chosen to tell the truth instead of telling a story which no one could believe. The remarks were made incidentally, no question of that sort was presented or passed upon, and no belief in the innocence of the appellant was expressed. The statement of the trial judge, in its entirety, indicates what is indicated by a reading of the entire transcript, that no miscarriage of justice has occurred.

No error appearing, the judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurred.